Filed 8/21/25  Minnifield v. State of California CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL WAYNE MINNIFIELD, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STATE OF CALIFORNIA, GINGER FIERRO et al., <br><br> Defendants and Appellants. | B331542 <br> (Los Angeles County <br> Super. Ct. No. 19STCV24850) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Alarcon, Judge.  Affirmed.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General, Rhonda L. Mallory and Catherine Woodbridge, Supervising Deputy Attorneys General, Andrew Adams and Betty Chu-Fujita, Deputy Attorneys General, for Defendants and Appellants.

Dordick Law Corporation, Gary A. Dordick and John M. Upton for Plaintiff and Respondent.

## INTRODUCTION

On January 25, 2019, appellant Ginger Fierro (Fierro) struck a pedestrian with the vehicle she was driving for work. Fierro was turning left through an intersection, and the pedestrian, respondent Michael Wayne Minnifield (Minnifield), was crossing the street in her path. Both Fierro and Minnifield had a green light.

Minnifield sued Fierro and her employers, appellants the State of California, the California Department of General Services, and the California Department of Corrections and Rehabilitation (collectively, the State). The case went to jury trial and the jury found Fierro negligent; it awarded Minnifield $8,449,723.92 in damages. The trial court denied motions for new trial and for judgment notwithstanding the verdict. Fierro and the State now appeal both the judgment and the denial of post-trial motions, arguing the trial court wrongly admitted certain evidence, unfairly edited certain demonstratives, and permitted Minnifield's counsel to make improper arguments. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2019, Minnifield filed a complaint alleging that Fierro, an employee of the State driving a vehicle owned by the State, struck Minnifield while making a left turn through the intersection of Bauchet Street and North Vignes Street in Los Angeles. The complaint alleged Minnifield had been crossing properly in the crosswalk and the collision was Fierro's fault. It asserted a cause of action for negligence against the State and Fierro.[1] The

---

[1] The complaint also asserted a cause of action for loss of consortium on behalf of Minnifield's wife. This claim was voluntarily dismissed on March 30, 2023, and is not relevant to the appeal.

State and Fierro filed a joint answer, and the parties spent the next three and a half years preparing the case for trial.

Trial was called on March 30, 2023. The court heard and ruled on several motions in limine, two of which are relevant here. First, the court granted a defense motion to exclude the Traffic Collision Report (TCR), prepared by the police after the incident, from evidence. Second, the court granted a defense motion to exclude evidence of unpaid medical bills incurred by Minnifield, unless those bills could be shown to reflect the reasonable cost of reasonably necessary medical care.

After voir dire, counsel made opening statements on April 7, 2023.[2] Minnifield's theory was that he was properly crossing within a marked crosswalk and Fierro hit him, causing him to need a series of surgical procedures and other medical treatment. Fierro and the State contended Minnifield was outside the crosswalk when Fierro hit him at a low speed, and she only injured his ankle, so at most she was only responsible for his ankle treatment. Over the subsequent five-day trial, the jury heard 14 witnesses testify, including Minnifield and Fierro. Closing argument followed on April 14 and 17, 2023.

On April 18, 2023, the jury returned a special verdict finding Fierro negligent and Minnifield not negligent, and awarding $8,449,723.92 in damages to Minnifield. The damages award was broken down into four categories: $1,019,231.92 in past medical expenses, $1,180,492 in future

---

[2]    In his opening statement, Minnifield's counsel used a PowerPoint presentation containing a slide to which defense counsel objected. The court overruled the objection. It now appears that no party has retained a copy of this slide. Appellants raise this issue in their statement of facts, but do not discuss it in the argument portion of their opening brief; any claim of error based on the slide has therefore been forfeited. (See *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 12, fn. 5.)

medical expenses, $1,250,000 in past non-economic losses, and $5 million in future non-economic losses. The trial court entered judgment on the special verdict, against the State and Fierro, on May 16, 2023.

The State and Fierro moved for a new trial and for judgment notwithstanding the verdict. In the motion for new trial, they argued the court improperly admitted references to the TCR into evidence, causing the jury to believe the TCR found Minnifield was within the crosswalk when Fierro hit him. They also argued Minnifield was allowed to use improper demonstratives related to his medical bills, while appellants' own demonstratives on that subject were improperly edited. Finally, they made a series of arguments related to the testimony of a treating physician, a rejected jury instruction, and the alleged insufficiency of the evidence to support the verdict amount.

The motion for judgment notwithstanding the verdict was based solely on the argument that the damages award was unsupported by the evidence. On July 28, 2023, the court denied both the motion for new trial and the motion for judgment notwithstanding the verdict.

The State and Fierro timely appealed both the judgment and the denial of the post-trial motions.

## DISCUSSION

Appellants raise three issues. First, they argue the trial court mishandled objections and challenges related to the TCR. Second, they contend the trial court unfairly permitted Minnifield's experts to use their full demonstrative materials while editing demonstratives presented by defense experts. Third, they claim the jury's damages award was not supported by substantial evidence.

4

## I.  *TCR Evidence*

As already noted, the trial court excluded the TCR from evidence in response to a defense motion in limine.  Nevertheless, the TCR featured prominently in the examination of two witnesses and was mentioned in closing argument as well.  We review the trial court's evidentiary rulings for abuse of discretion.  (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 747.)  We will only disturb such a ruling if the court acted in an arbitrary, capricious, or patently absurd manner and appellants were prejudiced.  (*Briley v. City of West Covina* (2021) 66 Cal.App.5th 119, 132 (*Briley*).)

### A.  *Testimony of John Edward Baker*

The first witness to discuss the TCR, John Edward Baker (Baker), Minnifield's accident reconstruction expert, was also the first witness called in the trial.  Under questioning from counsel for both sides, Baker testified to the existence of the TCR, the various measurements and photographs it contained, its terminology, and how he used it to prepare his expert assessment.  Baker also testified that the TCR agreed with his own assessment that Minnifield was in the crosswalk when Fierro hit him.

During this portion of Baker's testimony, appellants objected only twice, and neither objection was based on the inadmissibility of the TCR or the court's previous ruling excluding the TCR from evidence.  When Baker incorrectly stated that the officers who prepared the TCR had been deposed in this case, counsel's objection was "misstates the evidence."[3]  And when

---

[3]    The court initially overruled the objection, but then gave the jury a 10-minute break and had a brief discussion with counsel in which everyone agreed the police officers had not been deposed and there would be a correction when the jury returned.  When the jury returned, the court said, "I

5

Minnifield's counsel sought the court's permission to ask about the TCR's estimate of where Minnifield was when Fierro hit him, appellants objected that the proposed line of inquiry was "vague and ambiguous."[4]

Because appellants never objected to Baker's testimony on the basis that the TCR was inadmissible or excluded from evidence, they forfeited any challenge to Baker's testimony on those bases. (Evid. Code, § 353; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563–564 (*SCI California*).) Appellants have likewise forfeited any challenge based on the two objections they did make. Though Baker erred in stating that the officers who prepared the TCR had been deposed, and no express correction was ever provided, appellants do not explain how the error was prejudicial to them. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–556 (*Golden Door*); *DFS Group, L.P. v. County of San Mateo* (2019) 31 Cal.App.5th 1059, 1086.) They argue generally that an expert opinion is valueless if it lacks foundation, but make no attempt to demonstrate how a mistake about which potential witnesses were deposed undermines the foundation of Baker's work. And appellants provide no discussion at all to support their "vague and ambiguous" objection to the inquiry about the TCR's assessment of Minnifield's location. (See *Golden Door, supra,* 50 Cal.App.5th at pp. 554–556.)

---

think there was a question that was struck and we're going—counsel is going to re-ask the question." There was no further discussion of the issue.

[4]    It is unclear whether the objection was withdrawn before it was overruled. No objection was raised to any individual question posed by Minnifield's counsel.

B. *Testimony of Fierro*

The TCR surfaced again during Fierro's testimony, on re-cross, when Minnifield's counsel asked if Fierro was aware that the TCR concluded Minnifield was in the crosswalk when Fierro hit him. Here appellants did object on the basis that the TCR had been excluded. However, at this point, the objection was too late. Appellants had already permitted Baker to testify that the conclusions in the TCR matched his own, which were that Minnifield was in the crosswalk when Fierro hit him. They do not explain why Minnifield's counsel should have been prevented from questioning Fierro about evidence that had already been admitted.

Further, as counsel for Minnifield pointed out in response to appellants' objection, appellants read portions of the TCR into the record during their examination of Baker, asking if Baker had better information than the officers who prepared the TCR. This is what led Minnifield's counsel to elicit Baker's testimony that the TCR agreed with him. The TCR's assessment of Minnifield's location was not, as appellants argue, information smuggled in "by the back door." By the time Fierro was on the stand, the information was already in the metaphorical house, through a door opened by appellants. (See *People v. Kerley* (2018) 23 Cal.App.5th 513, 553–554.)

C. *Closing Argument*

Finally, appellants complain that Minnifield's counsel commented on the TCR in closing argument.[5] Counsel told the jury: "So, you know, we

---

[5] Appellants also complain that Minnifield's counsel commented on their failure to call an accident reconstruction expert of their own. However, this argument has been forfeited on two grounds. First, no objection was made to those comments at the time. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794–795 (*Cassim*).) And second, this argument was not included in the

7

brought in Mr. Baker. It was a long time ago. Our expert. We paid him to analyze the physics, to go through the depositions, to look at the blood splatter. The police report measured the distance from the blood splatter to the crosswalk and to the front of the car." Defense counsel offered two objections: "misstates the evidence" and their motion in limine to exclude the TCR. The court overruled the objections and told counsel she could respond in her argument.

Appellants do not explain how this ruling was in error. Baker testified about the contents of the TCR, and appellants do not demonstrate that counsel's comments either contradicted or misconstrued that testimony. "[E]rror must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) Appellants have failed to meet their burden on this challenge.

### D. *Prejudice*

Even if the trial court had erred in admitting testimony or permitting argument about the TCR, and even if appellants had not forfeited several of their challenges, no prejudice resulted. As Minnifield's counsel correctly observed in his closing, the only evidence regarding Minnifield's position in the intersection was that Minnifield was crossing within a crosswalk on a green light. That was Baker's conclusion. That was Minnifield's testimony as well.

The only other witness on this subject was Fierro, who testified she never saw Minnifield, either in the crosswalk or out of it, until she hit him. Fierro concluded Minnifield must have been outside the crosswalk because

---

headings of their opening brief. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 279.)

she never saw him (or anyone else) inside the crosswalk. But her testimony is clear that she never perceived him until they made physical contact; therefore, she had no knowledge about where he was.

Appellants do not explain how exclusion of testimony about the TCR changes the evidentiary balance or would lead to a different result. We cannot disturb the court's rulings absent such a showing. (*Briley, supra,* 66 Cal.App.5th at p. 132.)

## II.    *Expert Testimony*

Minnifield called a billing expert, Dr. Andrew Morris, to opine on the medical expenses incurred by Minnifield. During his testimony and over appellants' objection, Dr. Morris used a demonstrative that tallied the total amount Minnifield had been billed for past medical services ($2,473,286.30), and showed what Dr. Morris believed was the proper, reasonable value of those services ($1,019,231.92). In response, appellants called their own billing expert, Tami Rockholt (Rockholt), who wanted to use a demonstrative that included the rates Medicare would pay for those services.

However, Minnifield objected to Rockholt's demonstrative. There was a discussion at sidebar where the court suggested covering up the Medicare numbers but made no ruling, instead taking a recess and instructing counsel to do some further legal research. After the recess, counsel returned and told the court they had agreed to cover the Medicare numbers. Appellants now argue the court was wrong to allow Dr. Morris's demonstrative and wrong to edit Rockholt's, and in doing both gave Minnifield an unfair advantage.

However, the court did not edit Rockholt's demonstrative; counsel did. Neither party obtained a ruling on Minnifield's objection to Rockholt's demonstrative. Out of the presence of the court, counsel reached an

agreement to physically cover certain numbers so the jury would not see them. Since no ruling was obtained, and an agreement was reached, appellants have forfeited any challenge based on the alterations to their demonstrative. (See *Golden Door, supra*, 50 Cal.App.5th at pp. 555–556.)

This leaves only appellants' argument that the jury should not have been shown the amounts billed to Minnifield for medical services. Appellants rely on *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 (*Howell*) and *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308 (*Corenbaum*)[6] for the proposition that the billed amounts for medical services are irrelevant and inadmissible. However, both *Howell* and *Corenbaum* dealt with situations where the medical provider had already settled their bill and accepted a lesser sum in full payment. (*Howell, supra,* 52 Cal.4th at pp. 549–550; *Corenbaum, supra*, 215 Cal.App.4th at pp. 1319–1323.) Here, there is no evidence that any of Minnifield's providers had accepted any payment on their bills.

Further, even if allowing Dr. Morris's demonstrative was an error, appellants have not shown the error was prejudicial. First, this was demonstrative material; the jury received an instruction that demonstratives are not evidence, and we presume the jury follows the instructions given. (*Carroll v. Commission on Teacher Credentialing* (2020) 56 Cal.App.5th 365, 382–383.) Second, the jury did not award the billed amount and Dr. Morris never told them the billed amount was reasonable.

---

[6]    Disagreed with by *Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1333–1339 & fn. 6.) There appears to be a split of authority on the relevance of medical bills; appellants identify the split in their reply brief but neither party discusses it. (See *Pebley v. Santa Clara Organics, LLC* (2018) 22 Cal.App.5th 1266, 1273–1276.) Because we conclude the asserted error did not prejudice appellants, we need not discuss the details of the split.

Dr. Morris testified that he determined the reasonable value of each service by determining the average cost of that service within the zip code where the service was provided, using a database that automatically removed outlier prices. According to Dr. Morris, all those values added up to an overall total reasonable value of $1,019,231.92. That is exactly what the jury awarded. This shows the jury accepted Dr. Morris's figures; it does not show they were swayed by some reference to the billed amounts. (See *Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 805–806 [no prejudice where damages award was within the range created by opposing expert opinions].)

We also note that, as appellants point out, Dr. Morris and Rockholt did not present the jury with competing estimates of the reasonable cost for every medical service provided to Minnifield. While Dr. Morris assumed that all the medical services billed to Minnifield were necessary, and therefore included them in his analysis, Rockholt confined her analysis to the medical services identified as necessary by another defense expert, Dr. Ronald Kvitne. So if the jury decided more services than those identified by Dr. Kvitne were necessary, as apparently it did, Dr. Morris's testimony was the only evidence regarding the reasonable value of those services.

III.    *Damages Award*

Appellants argue the jury's verdict was unsupported by the evidence in three respects. First, they argue Minnifield failed to provide evidence showing that certain past medical expenses were either related to the collision or medically necessary. Second, they contend Minnifield failed to show any future surgical interventions would be necessary. Third, they claim the jury's award of non-economic damages was evoked by the argument of

11

Minnifield's counsel rather than by any evidence in support. We are not persuaded.

"In reviewing the sufficiency of evidence to support the jury's finding, we review the record in the light most favorable to the prevailing party, resolving in favor of the prevailing party all conflicts in either the evidence or the reasonable inferences to be drawn therefrom, to determine whether the record contains substantial evidence, contradicted or uncontradicted, supporting the finding." (*King v. State of California* (2015) 242 Cal.App.4th 265, 278–279 (*King*).)

A. *Past Medical Expenses*

Included in Minnifield's claim for past medical expenses were the costs of three surgeries: two on Minnifield's knee, and one on his back. Also included was the cost of a significant stay in a 24-hour care center. Appellants' expert, Dr. Kvitne, opined that these procedures were related to pre-existing conditions rather than the collision, and that the stay in the rehabilitation center was not necessary.

However, one of Minnifield's treating physicians, Dr. Simon Lavi, testified that the procedures were related to the collision. Dr. Lavi also testified that the stay in the rehabilitation center was necessary because Minnifield had multiple surgeries on multiple parts of his body and needed wound care. This testimony is sufficient to support the jury's finding that these expenses were necessary and related to the collision. (See *King, supra,* 242 Cal.App.4th at pp. 278–279.)

B.    *Future Medical Expenses*

"[A]n injured plaintiff is entitled to recover the reasonable value of medical services that are reasonably certain to be necessary in the future." (*Cuevas v. Contra Costa County* (2017) 11 Cal.App.5th 163, 182.)  Appellants argue that Minnifield cannot recover for "the future ankle, knee, and back surgeries" but do not specifically identify the procedures they mean.  They do not explain how each of those procedures was "elective," or how much the damages award would be reduced if the procedures were removed from it.

The only specifics come when appellants argue that Minnifield's ankle physician, Dr. Payman Benjamin Nikravesh, recommended either an ankle fusion or a joint replacement.  But this is not what Dr. Nikravesh recommended—he suggested a joint replacement, *followed by* an ankle fusion some years later, after the replacement wore out.

Appellants have failed to meet their burden of showing error on this subject.  (*Denham, supra,* 2 Cal.3d at p. 564.)


C.    *Non-Economic Damages*

The jury awarded Minnifield $5 million in future non-economic damages.  Appellants argue that this was unsupported and based on "improper arguments" from Minnifield's counsel.  Other than a single sentence referring to Minnifield's pain management, appellants provide no new discussion regarding Minnifield's damages.  Instead, they reprise the arguments already discussed and focus on the comments of Minnifield's counsel during closing argument.

As noted above, objections to opposing counsel's argument must be made contemporaneously.  (*Cassim, supra,* 33 Cal.4th at pp. 794–795.) Appellants point to four objections they raised during closing.  One of those,

13

counsel's mention of the TCR, has already been discussed; for the reasons given above, the court did not err in overruling that objection. For the remaining three, appellants do not explain why the objections made should have been sustained,[7] instead contending more broadly that Minnifield's argument was "improper, irrelevant, and intended to inflame the jury." Objections may not be revised or expanded after the fact; grounds not stated at trial are forfeited. (*SCI California, supra,* 203 Cal.App.4th at pp. 564–565.)

IV.    *Conclusion*

For the reasons given, we conclude that some of appellants' claims of error are forfeited, and appellants have failed to meet their burden on others. As to the remaining claims of error, we conclude, as also discussed above, that appellants have failed to show any resulting prejudice. Therefore, we affirm the judgment of the trial court, as well as the court's denial of the post-trial motions.

//

//

//

//

//

//

//

---

[7]    These were "misstates the evidence," "misstates testimony," and "Defendant's [motion in limine] 2."

14

## DISPOSITION

The judgment and orders of the trial court are affirmed.  Respondent Minnifield shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


COLLINS, J.


MORI, J.